**CONDITIONALLY GRANT and Opinion Filed July 30, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00102-CV**

**IN RE J. KYLE BASS, HAYMAN CAPITAL MANAGEMENT, L.P., HAYMAN OFFSHORE MANAGEMENT, INC., HAYMAN CAPITAL MASTER FUND, L.P., HAYMAN CAPITAL OFFSHORE PARTNERS, L.P., AND HAYMAN INVESTMENTS, LLC, Relators**

**Original Proceeding from the County Court at Law No. 3**
**Dallas County, Texas**
**Trial Court Cause No. CC-17-06253-C**

## MEMORANDUM OPINION

Before Justices Schenck, Nowell, and Garcia
Opinion by Justice Schenck

In this original proceeding, relators J. Kyle Bass and entities associated with him (collectively, "Hayman") challenge the trial court's application of the crime–fraud exception to documents Hayman asserts are subject to the attorney–client privilege. We issued a stay of the trial court's order requiring production of these documents, and we requested a response to the petition. After reviewing the parties' briefs and the mandamus record, we have determined Hayman is entitled to mandamus relief. We therefore conditionally grant the writ.

BACKGROUND

Real parties in interest United Development Funding, L.P. and related entities (collectively, "UDF") are the plaintiffs below. They sued Hayman for business disparagement and tortious interference and asserted the various Hayman parties conspired to commit these torts by spreading false and damaging information about UDF to the public market, to UDF's business associates, and to governmental authorities, after acquiring short positions in UDF stock, with the objective of driving down the price of UDF stock, which benefited Hayman's short positions.

In response to discovery requests, Hayman produced a privilege log designating certain documents responsive to the requests as being subject to the attorney–client privilege. UDF challenged those designations. At the hearing on UDF's motion to compel production, the trial court determined Hayman established a prima facie case of attorney–client privilege under Rule 503 of the Texas Rules of Evidence. However, with respect to four categories of documents, consisting of 331 documents, the court ordered the appointment of a special master to conduct an *in camera* review of the documents before determining whether they were privileged. The special master found 326 of the documents were subject to the privilege.

UDF then sought production of 318 of those documents claiming they were subject to the crime–fraud exception to the application of the attorney–client privilege. More particularly, UDF claimed Hayman was engaged in a criminal and fraudulent "short-and-distort" scheme that falls within the crime–fraud exception.

The matter was assigned to a visiting judge who found UDF had "made a *prima facie* showing of a contemplated crime or fraud" and found that "each of the 318 documents relates to and has a nexus with the Defendants' underlying fraudulent or criminal conduct." Accordingly, the visiting judge ordered Hayman to produce the documents.[1]

Hayman now seeks relief from those orders claiming the trial court abused its discretion in applying the crime–fraud exception to the privilege.

## AVAILABILITY OF MANDAMUS RELIEF

Mandamus is an extraordinary remedy that is available only in limited circumstances. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). Mandamus relief is available when the trial court abuses its discretion and there is no adequate remedy by appeal. *In re Deere & Co.*, 299 S.W.3d 819, 820 (Tex. 2009) (orig. proceeding) (per curiam).

Here, the trial court was required to interpret legal rules in making its determination regarding the crime–fraud exception. *Granada Corp. v. Hon. First Court of Appeals*, 844 S.W.2d 223, 225 (Tex. 1992) (orig. proceeding). Because this mandamus proceeding arises out of the trial court's interpretation of a legal rule, our review is to be conducted with limited deference to the trial court. *Walker*, 827

---

[1] The visiting judge entered two orders in connection with the 318 documents. One is dated December 3, 2020, finding UDF made a prima facie showing of a contemplated crime or fraud by Hayman, and the other is dated February 5, 2021, finding each of the withheld documents relates to and has a nexus with Hayman's underlying fraudulent or criminal conduct and ordering production of the documents.

S.W.2d at 840.

Whether a clear abuse of discretion can be adequately remedied by appeal depends on a careful analysis of the costs and benefits of interlocutory review. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding) (citing *In re Prudential Ins. Co.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding)). If an appellate court cannot remedy a trial court's discovery error, then an adequate appellate remedy does not exist. *In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex. 2004) (orig. proceeding). Appeal is inadequate when a trial court erroneously orders the production of privileged documents. *In re Ford Motor Co.*, 211 S.W.3d 295, 298 (Tex. 2006) (orig. proceeding).

## DISCUSSION

Hayman claims the documents the trial court compelled it to produce are attorney–client communications and that UDF failed to establish the application of the crime–fraud exception to the privilege afforded the communications.

The attorney–client privilege exists and has been a cornerstone of our legal system for nearly 500 years because the interests protected and secured by the promise of confidentiality are not merely significant, they are quintessentially imperative. *Paxton v. City of Dallas*, 509 S.W.3d 247, 261 (Tex. 2017). Safeguarding the privilege is important—indeed compelling—because the consequences of disclosure are far from inconsequential. *Id.* Once information has been disclosed, loss of confidentiality is irreversible. *Id.* The bell, once rung, cannot

–4–

be un-rung, and neither dissemination nor use can be effectively restrained. *Id.*

Indeed, the attorney–client privilege holds a special place among privileges: it is "the oldest and most venerated of the common law privileges of confidential communications." *United States v. Edwards*, 303 F.3d 606, 618 (5th Cir. 2002). As "the most sacred of all legally recognized privileges," "its preservation is essential to the just and orderly operation of our legal system." *United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997).

The privilege rests on "the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Trammel v. United States*, 445 U.S. 40, 51 (1980). "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). The privilege's purpose could not be more evident: "to encourage clients to make full disclosure to their attorneys" and, in return, to allow clients to obtain full, fair, and candid counsel. *Id.*; *Fisher v. United States*, 425 U.S. 391, 403 (1976). By promoting "full and frank communications between attorneys and their clients," the privilege "promote[s] broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389.

The crime–fraud exception to the attorney–client privilege renders the privilege inapplicable "if the lawyer's services were sought or obtained to enable or

aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud." TEX. R. EVID. 503(d)(1). The apparent reasoning behind the inclusion of fraud in the exception is this: by keeping client communications confidential pursuant to the attorney–client privilege, the attorney whose client intends to commit the misrepresentation or concealment is complicit in concealing the truth about the misrepresentation or concealment from its victim. *In re Tex. Health Res.*, 472 S.W.3d 895, 905–06 (Tex. App.—Dallas 2015, orig. proceeding). In such a situation, the attorney's silence affirmatively aids the client in committing the misrepresentation or concealment; thus, the attorney–client privilege does not extend to such communications. *In re Gen. Agents Ins. Co. of Am., Inc.*, 224 S.W.3d 806, 820 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding).

As UDF recognizes, the crime–fraud exception cannot be routinely invoked. For the exception to apply, the party seeking its application must first establish a prima facie case of crime or fraud, showing a violation sufficiently serious to defeat the privilege. *Freeman v. Bianchi*, 820 S.W.2d 853, 861 (Tex. App.—Houston [1st Dist.] 1991, orig. proceeding). The prima facie case requirement is satisfied when the party asserting the exception offers evidence establishing: (1) the elements of fraud or crime and (2) that the fraud or crime was ongoing or about to be committed when the privileged communication occurred. *In re Tex. Health Res.*, 472 S.W.3d at 905; *In re Gen. Agents*, 224 S.W.3d at 819. Once a prima facie case of crime or

fraud is established, the court must then find some valid relationship between the document in question and the prima facie crime or fraud. *See In re Tex. Health Res.*, 472 S.W.3d at 905.

UDF claims this Court's decision in Hayman's interlocutory appeal of the trial court's denial of its motion to dismiss UDF's claims pursuant to the Texas Citizen's Participation Act ("TCPA") establishes UDF made a prima facie case of a crime or fraud. *See Bass v. United Dev. Funding, L.P.*, No. 05-18-00752-CV, 2019 WL 3940976 (Tex. App.—Dallas Aug. 21, 2019, pet. denied) (mem. op.). In that interlocutory appeal, this Court concluded UDF carried its burden under the TCPA to establish a prima facia case for business disparagement and tortious interference. *Id.* at *25. It did not conclude UDF established the elements of a fraud or crime, declare when it might have done so, or what the role of counsel would have been. Thus, UDF's reliance on this Court's earlier opinion and the law-of-the-case doctrine is misplaced. Moreover, review under the TCPA favors the plaintiff and a liberal construction of pleadings and evidence. When we consider the application of the attorney–client privilege, the law favors the privilege. Thus, a determination at the TCPA stage as to a prima facie showing does not automatically translate to a prima facie showing for purposes of application of the crime–fraud exception to the attorney–client privilege.

The exception UDF attempts to invoke is for crime–fraud, not crime–tort. *In re Gen. Agents*, 224 S.W.3d at 820. Business disparagement is a tort separate and

apart from fraud.  It is a legal cousin of defamation, not fraud.  *See Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) ("A business disparagement claim is similar in many respects to a defamation action."); *see also Tucker v. Fischbein*, 237 F.3d 275, 288 (3d Cir. 2001) ("That reporters regularly consult with in-house counsel to discuss potential liability for libel does not thereby deprive those communications of the protection of the attorney-client privilege."). While both fraud and business disparagement may involve a misstatement, the exception to the privilege does not extend to all torts that may involve alleged misstatements.  If the enactors of the rule intended a wide sweeping application of same to any and all misstatements, we believe the rule would expressly state so.

UDF urges this Court to adopt the expansive view of the fraud exception to the attorney–client privilege the El Paso Court of Appeals embraced in *Volcanic Gardens Management Co. v. Paxson*.  847 S.W.2d 343 (Tex. App.—El Paso 1993, orig. proceeding) (concluding "under the crime/fraud exception to the lawyer-client privilege, 'fraud' would include the commission and/or attempted commission of fraud on the court or on a third person, as well as common law fraud and criminal fraud.").  We decline to do so and note that, notwithstanding certain language in the *Volcanic Gardens* opinion, the El Paso court continues to apply the elements of common-law fraud when determining the applicability of the crime–fraud exception, rather than requiring proof of a false statement only.  *See In re Seigel*, 198 S.W.3d 21, 28–29 (Tex. App.—El Paso 2006, orig. proceeding).  Moreover, an expansive

view of the exception would severely undermine the attorney–client privilege, whose preservation is essential to the just and orderly operation of our legal system. *Paxton*, 509 S.W.3d at 259.

In all events, Hayman's posts that UDF contends are false are also public record. There is no concealment issue here. And, because the statements are *about UDF itself*, it has the ability to determine whether they were in fact false. Application of the privilege would not in any way prevent UDF from discovering its claim or proving its case if, as it contends, the posts contained untrue statements.

UDF asserts its contention that Hayman engaged in a "short and distort" establishes a prima facie case of a crime, namely securities fraud. Yet UDF did not set forth the elements of a securities-fraud claim and did not attempt to attribute specific evidence to the elements of same. *See In re Tex. Health Res.*, 472 S.W.3d at 905. Thus, in addition to failing to meet its burden of establishing a prima facie case of fraud, UDF failed to establish a prima facie case of a crime or otherwise attempt to overcome its heavy burden of piercing the attorney–client privilege.

We conclude the trial court misapplied the law in this case and thus abused its discretion in ordering Hayman to produce privileged documents.

Having concluded the trial court abused its discretion by ordering the production of documents covered by the attorney–client privilege, we now consider whether Hayman has an adequate remedy by appeal. Because Hayman would be forced to produce privileged information, we would not be able to cure the trial

court's error and Hayman would not have an adequate remedy by appeal. *In re Weekley Homes, L.P.*, 295 S.W.3d 309, 322 (Tex. 2009) (orig. proceeding) ("Mandamus relief is available when the trial court compels production beyond the permissible bounds of discovery.").

## CONCLUSION

Because the trial court abused its discretion in ordering Hayman to produce privileged communications, and because Hayman does not have an adequate remedy by appeal, we order the trial court to vacate the December 3, 2020 Order on Crime–Fraud Motion and the February 5, 2021, Order Granting Plaintiffs' Motion to Obtain Documents Improperly Designated as Privileged Pursuant to the Crime–Fraud Exception. Because we assume the trial court will comply with this opinion, we direct our clerk not to issue the writ of mandamus unless information is received that the district court has not so complied.

We lift the stay issued by this Court on February 12, 2021.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

210102F.P05

–10–