**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-20-00145-CV**
_____

**IN RE DAIMLER TRUCKS NORTH AMERICA LLC**

_____

**Original Proceeding**
**260th District Court of Orange County, Texas**
**Trial Cause No. D160258-C**
_____

**MEMORANDUM OPINION**

In this wrongful death products liability case, Daimler Trucks North America,

LLC ("DTNA") seeks mandamus relief from a trial court order, signed on May 12,

2020, in Trial Court Case No. D160258-C, *Robert W. Doiron, et al., v. Daimler*

*Trucks North America, LLC, et al.*, (hereinafter *Doiron*). The trial court ordered

DTNA to produce certain discovery items that had previously been produced in a

different lawsuit that was filed in West Virginia, styled *Wanda Francis Lawrence,*

*et al. v. Daimler Trucks North America, LLC f/k/a Freightliner, LLC and LTD*

*Logistics, Inc.*, (hereinafter *Lawrence*). In *Doiron*, DTNA objected to the discovery

requests and to having to produce the *Lawrence* discovery. A law firm that had represented DTNA in the *Lawrence* case then submitted the *Lawrence* discovery items by providing two memory devices with thousands of documents and images to the *Doiron* trial court for an in-camera review.

The *Lawrence* case involved an accident that occurred in 2010 and involved a 2009 Columbia Freightliner truck manufactured by DTNA that was involved in a collision. As a result of the collision, the side mounted fuel tank on the driver's side of the truck ruptured, the truck caught on fire, and the passengers and driver died. In *Lawrence*, the plaintiffs alleged that the 2009 Freightliner was defective because of the side mounted, unguarded fuel tanks and fuel system which was used on all Class 8 semi tractors and that it was subject to post collision fires from impacts that were foreseeable, and that the defects related to the battery, the fuel tank design that allowed fuel to escape, that it lacked a fire suppression system or shielding, that the location of the fuel tanks was not safe, that the sleeper compartment lacked an exit door, and it was made of highly combustible materials. The *Lawrence* case was tried to a jury and the jury found in favor of the defendants. The discovery and items produced in the *Lawrence* case were subject to a protective order entered by the West Virginia trial court.

The *Doiron* plaintiffs alleged in their Fourth Amended Petition that in 2014, Mr. Doiron was riding as a passenger in the sleeper compartment of a 2006 Columbia

2

120 Freightliner truck when the Freightliner was involved in a collision and the truck caught on fire, causing Mr. Doiron to suffer burns to a large percentage of his body and eventually causing his death. The *Doiron* plaintiffs allege that the 2006 truck was manufactured by DTNA and that the design and manufacture of the 2006 truck was unreasonably dangerous because of alleged defects in the placement of the fuel tank immediately behind the front wheels and under the doors of the passenger compartment, inadequate shielding of the fuel tanks; the design of a fuel tank system with components that are compromised under survivable collision forces that expose occupants to post-collision fuel fed fires, burns, and death; and the failure to equip the truck with emergency exit doors to allow occupants to exit through the sleeper compartment. Real Parties in Interest, Plaintiffs Robert Doiron and Tracy Doiron, individually and as representatives of the Estate of Adam Doiron ("the *Doiron* Plaintiffs"), assert claims against DTNA for strict product liability, negligence, breach of implied warranty, and gross negligence.

The Doiron Plaintiffs sent requests for production asking DTNA and the attorneys that represented DTNA in the *Lawrence* suit to produce all documents, expert reports, and depositions from the *Lawrence* suit. DTNA filed objections to the discovery arguing that the discovery was overbroad on its face and the Doiron Plaintiffs filed a motion to compel with the trial court. After conducting an initial hearing and reviewing one memory stick of the *Lawrence* discovery, the trial court

3

sent the parties a letter dated March 6, 2019, itemizing the materials that the trial court had concluded were or were not subject to discovery and asking the parties to try and reach some agreement on the production of the documents. At some point thereafter, an additional memory stick of items from the *Lawrence* suit was provided for in-camera inspection. The trial court appointed a Special Master to review all the *Lawrence* items and then to make recommendations to the trial court. After receiving the recommendations of the Special Master, the trial court sent another letter dated March 9, 2020, outlining the items that should or should not be produced. And on May 12, 2020, the trial court entered an Order requiring production of "discovery documents" from the *Lawrence* suit.

DTNA filed a petition seeking mandamus relief in this Court. We stayed production of the documents temporarily while we considered the petition and the responses filed by the Real Parties, the plaintiffs, Robert W. Doiron and Tracy Doiron, Individually and as Representative of the Estate of Adam Doiron ("Doiron"), and an intervenor, Great Midwest Insurance Company ("GMIC"). *See* Tex. R. App. P. 52.10.

DTNA contends that the trial court erred by requiring it to produce items from the *Lawrence* suit because the trial court's order included documents concerning other incidents of post-collision fires, expert and corporate witness depositions from other litigation, and documents that belong to a non-party corporate affiliate of

4

DTNA. DTNA argues the requests made by the plaintiffs for the documents were impermissibly overbroad. DTNA contends that the trial court erred in ordering the production of the *Lawrence* documents because the documents are not discoverable due to differences between *Doiron* and *Lawrence* concerning state law, the products at issue, the factual allegations, and the experts and witnesses, and also because the *Lawrence* discovery includes some documents not within DTNA's possession or control.

The Doirons argue that DTNA is not entitled to mandamus relief because DTNA failed to establish that it lacks an adequate remedy by appeal, the trial court and the special master narrowly tailored the discovery of documents from *Lawrence*, and the documents the trial court ordered to be produced go to the heart of the case, which the Doirons argue is DTNA's knowledge of the defect in the vehicle at issue in *Doiron*. The Doirons argue the *Lawrence* documents are relevant because the two vehicles used the same fuel delivery system. GMIC argues the protective order in *Lawrence* does not prohibit the discovery ordered in *Doiron*, the discovery ordered in *Doiron* falls within the scope of discovery permitted under the Texas Rules of Civil Procedure, and DTNA had sufficient control over the *Lawrence* documents produced by its parent, Daimler AG, to permit production in *Doiron*.

Mandamus will issue only when the petition and record establish a clear abuse of discretion for which the relator has no adequate remedy by appeal. *In re*

5

*Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). A trial court abuses its discretion when it acts without reference to any guiding rules or principles or when it acts in an arbitrary or unreasonable manner. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). "[An] order that compels overly broad discovery 'well outside the bounds of proper discovery' is an abuse of discretion for which mandamus is the proper remedy." *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995) (orig. proceeding). There is no adequate remedy by appeal when an appellate court cannot remedy a trial court's discovery error. *In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex. 2004) (orig. proceeding).

Texas Rule of Civil Procedure 192.3 permits a party to "obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party." Tex. R. Civ. P. 192.3(a). Requests for production must be "reasonably tailored to include only matters relevant to the case." *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding). "A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information." *In re CSX Corp.*,

6

124 S.W.3d 149, 153 (Tex. 2003) (orig. proceeding). "Overbroad requests for irrelevant information are improper whether they are burdensome or not[.]" *In re Allstate Cty. Mut. Ins. Co.*, 227 S.W.3d 667, 670 (Tex. 2007) (orig. proceeding). "It is the discovery proponent's burden to demonstrate that the requested documents fall within the scope-of-discovery of Rule 192.3." *In re TIG Ins. Co.*, 172 S.W.3d 160, 167 (Tex. App.—Beaumont 2005, orig. proceeding).

Whether discovery is overbroad in a products liability case depends on whether the order covers products relevant to the case and is reasonable in its scope. *In re Graco Children's Prods., Inc.*, 210 S.W.3d 598, 600-01 (Tex. 2006) (orig. proceeding). A trial court abuses its discretion if there is no apparent connection between the alleged defect and the discovery ordered. *Id*. at 601. Requests that are not tied to the product at issue in the case and the time period when the use occurred are overbroad. *Am. Optical Corp.*, 988 S.W.2d at 713.

DTNA argues the trial court abused its discretion by compelling discovery responsive to requests for virtually all of the documents from *Lawrence*, but, as DTNA acknowledges, the trial court carved out some categories of case-specific *Lawrence* documents that the trial court concluded were irrelevant to the present case. When a party propounds overly broad requests, the trial court must either sustain the objection or act to narrowly tailor the requests. *In re Mallinckrodt, Inc.*, 262 S.W.3d 469, 474 (Tex. App.—Beaumont 2008, orig. proceeding). We review

7

the trial court's discovery order for an abuse of discretion. *In re Deere & Co.*, 299 S.W.3d 819, 820 (Tex. 2009) (orig. proceeding). In *Deere*, the Texas Supreme Court conducted a mandamus review of the discovery ordered by the trial court, not the discovery requested by the plaintiff. 299 S.W.3d at 821. The Court considered the trial court's effort to be a "proper effort to narrow discovery[.]" *Id.* Accordingly, we consider Relators' complaints regarding overbroad discovery requests as tailored by the trial court in its order of May 12, 2020.

In a product liability case, evidence of other incidents involving a product may be relevant if the incidents occurred under reasonably similar conditions. *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 881 (Tex. 2014). The Doirons allege DTNA's 2006 Columbia 120 Tandem Axle truck, which was involved in the 2014 accident that resulted in Doiron's death, was unreasonably dangerous due to defects including:

> (1) placement of the fuel tanks immediately behind the vehicle's front wheels and under the doors to the passenger compartment, (2) inadequately shielding the fuel tanks to protect the integrity of the fuel tank system; (3) otherwise designing and manufacturing the fuel tank system of the vehicle model with components that are compromised under survivable collision forces that then expose vehicle occupants to post-collision fuel fed fires, the extreme risk of burn injuries, and death; and (4) failing to equip the subject truck with emergency exit doors to allow egress from the sleeper compartment in the event of an emergency.

The Real Parties argue that information about other accidents is relevant to their claim that the product was unreasonably dangerous. The product at issue in *Doiron* is a 2006 Columbia 120 Tandem Axle truck, and the Doiron accident

occurred in 2014. The product involved in the *Lawrence* case was a 2009 Columbia truck. In *Lawrence*, the accident occurred in 2010, and generally the plaintiffs alleged the 2009 Columbia truck was unreasonably dangerous because it lacked a sleeper access door, had a battery system located where it was likely to be damaged in a collision, and had a fuel tank that was not equipped with a fire suppression system and that was located in an unsafe position. The allegations in *Lawrence* concerned a similar product and at least one defect that was alleged to be the cause of the injury in *Lawrence* has also been alleged as a defect in *Doiron*. That said, the scope of discovery the trial court permitted in *Lawrence* included documents from twenty-two other suits, only some of which involved a Columbia truck. The documents from the other cases that were produced in the *Lawrence* case did not involve the same product as the product involved in the accident in *Doiron*. Furthermore, in *Doiron* the plaintiffs have alleged the Columbia truck was defective due to the placement of the fuel tank, inadequate shielding of the fuel tanks, flammable components, and failing to equip the truck with emergency exit doors. The relevance of evidence of other accidents would further depend upon whether each accident involved the same product in an accident under the same or substantially similar conditions. *See Ruiz*, 432 S.W.3d at 881. Only discovery produced in cases with at least one of the *Doiron* allegations would bear any relevance to the case before the trial court.

9

We conclude that the scope of the discovery ordered by the trial court in the May 12, 2020 Order is overbroad because it requires production of documents from cases that did not involve a Columbia truck with one of the four defects identified in the Doirons' petition. As explained above, those suits are not substantially similar to this case. *Id.*; *see generally Graco*, 210 S.W.3d at 601 (there must be an apparent connection between the alleged defect and the discovery ordered). Only documents relating to the Columbia truck and with a common alleged defect are discoverable by the Doirons. *See In re Caterpillar, Inc.*, No. 09-13-00106-CV, 2013 WL 1932819, at *2 (Tex. App.—Beaumont 2013, orig. proceeding) (mem. op.) (A request for all records in other lawsuits was overly broad because it was not limited to information about the component common or similar to the machine in both lawsuits.).

Even though *Doiron* and *Lawrence* may have both concerned a post-collision fuel-fed fire, that does not mean that discovery produced in *Lawrence* from cases that are not substantially similar to *Doiron* would be discoverable. Nor would such information necessarily be relevant for purposes of showing a safer alternative design. *See* Tex. Civ. Prac. & Rem. Code Ann. § 82.005(b) ("'[S]afer alternative design' means a product design other than the one actually used that in reasonable probability: (1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially

impairing the product's utility; and (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge."). The trial court abused its discretion by ordering discovery regarding products with no apparent connection between the alleged defect and the discovery ordered. *See Graco*, 210 S.W.3d at 600-01.

DTNA also argues the trial court clearly abused its discretion by ordering production of expert reports, expert depositions, and DTNA corporate representative depositions from *Lawrence* because the trial court circumvented the procedure established by the Texas Rules of Civil Procedure for expert discovery. *See* Tex. R. Civ. P. 194 and 195.1. "The Rules of Civil Procedure define the scope and methods of discovery about expert witnesses." *In re Ford Motor Co.*, 427 S.W.3d 396, 397 (Tex. 2014) (orig. proceeding). Information relied upon by a testifying expert is discoverable only through a request for disclosure or through depositions and reports of the testifying expert. *See In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 814 (Tex. 2017) (orig. proceeding). The Doirons suggest information from expert reports in similar cases could be used to impeach DTNA's witnesses in *Doiron*, but the mandamus record does not show that a testifying expert in this case relied on the testimony and reports of expert witnesses in any of the other lawsuits. The Doirons suggest that information gleaned from the other case may or may not impact their

11

experts' opinions, but this argument sounds like a fishing expedition, which is not allowed. *See Am. Optical Corp.*, 988 S.W.2d at 713. We conclude the trial court abused its discretion by requiring production of the *Lawrence* expert reports, expert depositions, and DTNA corporate representative depositions. *See Nat'l Lloyds*, 532 S.W.3d at 814; *Ford Motor Co.*, 427 S.W.3d at 397.

DTNA also complains that the trial court clearly abused its discretion by ordering DTNA to produce documents that are in the possession of its parent company, Daimler AG. DTNA contends Texas Rule of Civil Procedure 205 provides the exclusive vehicle for obtaining discovery in the trial court from a non-party such as Daimler AG. *See generally* Tex. R. Civ. P. 205.1 (A party may compel discovery from a non-party only by obtaining a court order or by serving a subpoena.). DTNA further argues that the trial court abused its discretion by ordering production of Daimler AG's documents when the documents are not relevant to this lawsuit.

The documents produced by Daimler AG in *Lawrence* concern Mercedes trucks, not the Freightliner Columbia truck that is the product at issue in the Doirons' lawsuit against DTNA. Under the facts of the *Doiron* suit, the only Daimler AG documents produced in the *Lawrence* suit that are discoverable in the *Doiron* suit would be those documents relating to the product and common alleged defect. The trial court abused its discretion by ordering production of other Daimler AG documents. *See Caterpillar, Inc.*, 2013 WL 1932819, at *2.

12

For the reasons explained above, we conditionally grant DTNA's request for mandamus relief and lift the stay that we issued to stop the proceedings in the trial court pending our resolution of the mandamus petition. We are confident the trial court will vacate the May 12, 2020 discovery order. A writ of mandamus shall issue only in the event the trial court fails to comply.

PETITION CONDITIONALLY GRANTED.

PER CURIAM

Submitted on June 12, 2020
Opinion Delivered December 10, 2020

Before Kreger, Horton and Johnson, JJ.